UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| LAURIE DEERING, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:06-cv-215 |
| ) | |
| v. ) | |
| ) | Honorable Robert Holmes Bell |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____ ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) or supplemental security income (SSI) benefits. Plaintiff filed her applications on March 1, 2005 (A.R. 49-54, 164-66), claiming an onset of disability of October 1, 2003.[1] Plaintiff's claims were denied on initial review. (A.R. 22-27, 167-71). On October 25, 2005, plaintiff received a hearing before an administrative law judge (ALJ) at which she was represented by counsel. (A.R. 306-33). On November 3, 2005, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 13-21). On February 17, 2006, the Appeals Council denied review (A.R. 3-5), and the ALJ's decision became the Commissioner's final decision. On March 29, 2006, plaintiff filed her complaint in this court seeking review of the

_____

[1] Plaintiff's DIB application asserted a December 15, 2002 onset of disability (A.R. 49), but plaintiff later amended her claim to assert an October 1, 2003 onset. (A.R. 47).

Commissioner's decision denying her claims for DIB and SSI benefits. Plaintiff's statement of errors is set forth verbatim below:

1. THE ALJ DID NOT FIND A SUFFICIENT NUMBER OF JOBS TO FIND THAT PLAINTIFF COULD PERFORM WORK.

2. THE ALJ DID NOT GIVE PROPER WEIGHT TO THE CONSULTATIVE PSYCHOLOGICAL EXAM.

(Statement of Errors, Plf. Brief at 9, docket # 7). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision, and that the Commissioner's decision finding that plaintiff was not disabled is supported by substantial evidence. I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the Commissioner are not subject to reversal merely because there

exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on October 1, 2003, her alleged onset of disability, and continued to meet those requirements through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that plaintiff had severe impairments of "a history of fibromyalgia, a history of chronic fatigue syndrome, low back pain from mild degenerative disc disease, anxiety, depression, and a history of narcotic addiction." (A.R. 20). Plaintiff did not have an impairment or combination of impairments which met or equaled the

-3-

requirements of the Listing of Impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible. The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> The claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk two hours in an eight-hour workday with the option to sit or stand at will, and sit six hours in an eight-hour workday with the option to sit or stand at will. She can never climb ladders, ropes, or scaffolding and can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. She is able to perform one-to-two-step tasks and have occasional contact with the public, co-workers, and supervisors.

(A.R. 20). Plaintiff was unable to perform her past relevant work. Plaintiff was 48 years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual. Plaintiff has more than a high school education. The ALJ found that plaintiff had transferable work skills, but in view of plaintiff's age and RFC, the transferability of her work skills was not at issue. In response to a hypothetical question regarding a person of plaintiff's age and with her RFC, education, and work experience, the vocational expert (VE) testified that there were approximately 8,300 jobs within the State of Michigan that plaintiff was capable of performing. (A.R. 328, 330-31). The ALJ held that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 13-21).

**1.**

Plaintiff argues that the jobs identified by the VE did not constitute a significant number of jobs. (Plf. Brief at 9-10, docket # 7; Reply Brief at 2, docket #9). In response to the ALJ's hypothetical question, the VE testified that there were approximately 8,300 jobs within the State of Michigan that a person of plaintiff's age and with her education, work experience, and RFC

would be capable of performing.[2] (A.R. 330-31). The 8,300 jobs easily constitute a significant number of jobs. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 is a significant number and collecting cases where as few as 174 positions were found to be a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 is a significant number); *see also Martin v. Commissioner*, 170 F. App'x 369, 374 (6th Cir. 2006)(870 jobs constituted a significant number of jobs); *Simons v. Barnhart*, 114 F. App'x 727, 734 (6th Cir. 2004); *Tidwell v. Barnhart*, 88 F. App'x 82, 85-86 (6th Cir. 2004). I find that the Commissioner's decision in this regard is supported by more than substantial evidence.

**2.**

Plaintiff argues that the ALJ failed to give sufficient weight to statements appearing in a four-page report by Dennis Mulder, Ed.D., summarizing the consultative examination the psychologist performed on May 24, 2005. Specifically, plaintiff believes that the ALJ failed to give sufficient weight to the consulting psychologist's opinion that plaintiff's GAF score on May 24, 2005, was "50 to 55," and the psychologist's statement characterizing plaintiff's prognosis for employment as "guarded . . . pending medical resolution." (Plf. Brief at 10-11, docket # 7; Reply Brief at 1-2, docket # 9). I find that plaintiff's argument does not provide a basis for disturbing the Commissioner's decision.

On May 24, 2005, Psychologist Mulder performed a consultative examination on behalf of Michigan's Disability Determination Service. Psychologist Mulder observed that plaintiff had never been "hospitalized psychiatrically." Plaintiff lacked any history of recent psychiatric

---

[2]The references in plaintiff's brief to "9,300 jobs" (docket # 7 at 7, 9), appear to be the result of plaintiff's mathematical or typographical errors.

treatment. Plaintiff's only treatment had occurred approximately 20 years earlier and related to problems in plaintiff's relationship with her mother. (A.R. 272). Plaintiff advised Psychologist Mulder that she was not taking any type of prescription medication. (A.R. 272). Plaintiff stated that she did not have a treating physician. She told Psychologist Mulder that Dr. Huntley had been her treating physician. Nothing in Mulder's report suggests that plaintiff told Mulder about Dr. Huntley's April 6, 2005 report (A.R. 227), in which plaintiff's treating physician Huntley indicated that plaintiff had become addicted to narcotics. Mulder's report simply states: "She denies any substance abuse treatment." (A.R. 272). Plaintiff advised Psychologist Mulder that she enjoyed cooking, reading, walking and bike riding. Plaintiff stated that her mornings were spent watching television and that in the afternoon and evening hours she would cook, read, and perform the household chores of dusting, laundry, and washing dishes. (A.R. 272-73). Mulder observed that plaintiff was alert and oriented. Plaintiff's thought processes were relevant, logical, and connected. Plaintiff appeared to be somewhat somatically preoccupied. On page four of his report (A.R. 275), Mulder expressed his opinions that plaintiff's GAF on May 29, 2005, was "50 to 55" and that he considered plaintiff's prognosis for employment to be guarded . . . pending medical resolution." (*Id.*). The ALJ considered Psychologist Mulder's opinions concerning plaintiff's GAF and her prognosis for employment. The ALJ found that the opinions of plaintiff's treating physician and the opinions of non-treating medical sources other than Psychologist Mulder to be more persuasive and consistent with the record as a whole:

> Richard A. Huntley, M.D., treated the claimant from October 1999 through May 2004. He states that the claimant's major problem is depression and that she has been on numerous antidepressants with varying success. Because of the aches and pains that the claimant described, the doctor felt that the claimant might have a collagen disease, but all the tests

were normal. The doctor has suggested that the claimant has a psychosomatic fixation and an addiction to narcotics and Nicorette gum (Exhibit 4F, page 1 [A.R. 227]).

The medical evidence discloses that, indeed, the claimant has a history of anxiety and depression for which she had been prescribed Valium and Lexapro (Exhibit 2F [A.R. 186]). A consulting psychologist has concluded that the claimant suffers from a recurrent, moderate, major depressive disorder and that her Global Assessment of Functioning [s]cale ranges from 50 to 55 (Exhibit 4F [A.R. 275]). The *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)* defines such GAF codes as representing moderate symptoms or moderate difficulty in social, occupational, or school functioning.

* * *

The claimant admitted that she can do household chores if she feels like it and enjoys reading and watching rental movies. Of interest is Exhibit 5F, page 2 [A.R. 273] in which the claimant has stated that she enjoys walks and bike riding. She further testified that she watches television. She also stated that she watches church services on television every week, but in May 2005 she claimed that she attended church services weekly (Exhibit 5F, page 2 [A.R. 273]). The claimant socializes with friends three to four times per month and goes out to eat occasionally. Because she cannot afford to buy car insurance, she walks to return rental movies and walks to a nearby grocery store to shop. She indicated that sometimes she will get a ride to the grocery store.

* * *

The claimant alleged that she has panic attacks one to two times a month that last one-half hour to one hour. These arise if she is asked to do something or perform a task. Regarding depression, the claimant said that she has been advised to have counseling through Community Mental Health but that she has no transportation to go there. However, the undersigned notes that the claimant has enough money to rent videos and go out to eat occasionally so one might conclude that she could use these funds to hire a cab to take her to counseling.

As mentioned above, the record indicates that the claimant has a narcotic addiction disorder. The claimant adamantly denies this claiming that Dr. Huntley in Exhibit 4F, page 1 [A.R. 227] was upset that she did not take his advice and sought treatment elsewhere so the doctor alleged that she has a problem with narcotics. According to her, she never took narcotics before she started seeing Dr. Huntley, who prescribed them and that she has not taken any since leaving his practice. The undersigned notes that the claimant received prescriptions for Vicodin from Dr. Kennedy during 1998 and that she told the staff at Muskegon Family Care on April 6, 2005 that her friends had given her Vicodin (Exhibit 9F [A.R. 301]). The claimant also denied being addicted to Nicorette gum contrary to Dr. Huntley's letter. Given these inconsistencies, the claimant's credibility is highly questionable. The undersigned cannot see any clear reason why a doctor would allege in writing that a patient or former patient had an addiction disorder unless he thought it was true. The undersigned gives

> considerable weight to Dr. Huntley's letter to the extent that it shows that plaintiff does not have a physically disabling condition.
>
> The undersigned finds that the claimant is not persuasive, and her allegations regarding her limitations are not credible.
>
> * * *
>
> A State Agency psychologist has assessed that the claimant is moderately limited in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek without interruptions and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers; responding appropriately to changes in work setting; and setting realistic goals or plans independently of others (Exhibit 7F [A.R. 279-83]).

(A.R. 16-18). The quoted excerpt shows that the ALJ carefully considered Psychologist Mulder's opinions, the opinions of other non-treating medical sources such as Joseph F. DeLoach, Ph.D., a state agency psychologist, and the record as a whole, when the ALJ made his RFC determination that plaintiff's mental impairments limited her to performing work involving one-to-two step tasks and having occasional contact with the public, co-workers, and supervisors. (A.R. 18). The ALJ gave the greatest weight to the opinions expressed by plaintiff's treating physician of nearly five years, Dr. Richard Huntley. He rejected plaintiff's arguments that her treating physician's opinions should be disregarded. (A.R. 16, 17). The opinions of treating physicians are generally given greater weight than the opinions of consultative examiners like Psychologist Mulder. *See Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2005). Plaintiff's argument that the ALJ did not adequately discuss or give appropriate weight to a consultative examiner's opinion is indistinguishable from the arguments

the Sixth Circuit recently rejected in *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463 (6th Cir. 2004):[3]

> The present case involves the opinion of a consultative examiner, whose opinion is usually entitled to less weight than that of a treating physician. See 20 C.F.R. § 404.1527(d). Logically, then, if the refusal to even acknowledge the opinion of a treating physician was harmless error in *Heston* [ *v. Commissioner*, 245 F.3d 528, 535-36 (6th Cir. 2001)], then the ALJ's failure in the present case to discuss thoroughly the opinion of a consultative examiner does not warrant reversal. After all, the ALJ did not ignore Dr. Mullady's opinion altogether; there was a reference to Dr. Mullady's treatment of Brymer in the ALJ's decision. Moreover, just as in *Craig* [*v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)], the record in Brymer's case includes opinions from other treating physicians and doctors performing residual functional capacity assessments that support the ALJ's conclusion and contradict the opinion of Dr. Mullady.

*Dykes*, 112 F. App'x at 468. Here, as in *Dykes*, the ALJ considered the consultative examiner's opinions within the context of the administrative record as a whole, including the opinions of plaintiff's treating physician and non-treating medical sources. I find that plaintiff's argument does not provide a basis for disturbing the Commissioner's decision.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  December 21, 2006          /s/  Joseph G. Scoville
                                    United States Magistrate Judge

---

[3] "'[A]n ALJ is not required to discuss all the evidence submitted, and the ALJ's failure to cite specific evidence does not indicate that it was not considered.'" *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005)(quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)).

**NOTICE TO PARTIES**

   Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).